## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**01/04/2010**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **8440 WESTPARK, LLC** | § | **CASE NO. 09-30131-H4-11** |
| Debtor | § | |

## ORDER APPROVING DEBTOR'S MOTION TO SELL SUBSTANTIALLY ALL ASSETS, FREE & CLEAR OF ALL LIENS, CLAIMS & ENCUMBRANCES, AND OTHER INTERESTS TO THE PROPOSED PURCHASER PURSUANT TO 11 U.S.C. §§ 105, 363(B), (F) AND (M)

The Court has considered the Debtor's *Motion to Approve Debtor's Sale of Substantially All Assets Free & Clear of All Liens, Claims & Encumbrances, and Other Interests to the Proposed Purchaser Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m)* ("Motion").

The Court finds that (i) the proposed sale is in the best interest of the estate and its creditors; (ii) adequate notice of the proposed sale and the hearing to consider the sale has been given to all creditors and parties-in-interest; and (iii) the Debtor's interest in the Property as more particularly described in the attached Exhibit "A" (including any and all improvements thereon, the "Property") shall be conveyed free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) in accordance with the Commercial Contract (as defined in the Motion), attached hereto as Exhibit "B." Accordingly, it is, **ORDERED THAT:**

1.    The Debtor's *Motion to Approve Debtor's Sale of Substantially All Assets Free & Clear of All Liens, Claims & Encumbrances, and Other Interests to the Proposed Purchaser Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m)* is **GRANTED.**

2.    The Commercial Contract by and between the Debtor, as Seller, and Stephen Schneidau, Trustee and his assigns (together with his assigns, "Schneidau") as Purchaser is hereby approved.

C:\Documents and Settings\Craig Cavalier\My Documents\DOCUMENT\Johnson\8440\clean Bankruptcy Sale Order 200pm revised.docx

US 210689v.2

3.     The Debtor is authorized to sell the Property to Schneidau for a cash price of One Million Two Hundred Thousand Dollars ($1,200,000.00) plus the other considerations set forth in the Commercial Contract.

4.     At Closing, the proceeds from the sale shall be disbursed to the following:

(i) Detering Properties, Ltd.- Three Thousand Six Hundred Thirty and 00/100 Dollars ($3,630.00)-representing past due rent;

(ii) Harris County Tax Collector-Forty-Nine Thousand Three Hundred Thirty-Nine and 95/100 Dollars ($49,339.95)- representing the total 2009 current taxes due, plus any additional interest and penalties due at Closing;

(iii) Harris County Tax Collector– Ninety-Four Thousand Nine Hundred Forty-Four and 49/100 Dollars ($94,944.49)-representing prior years (2007-2008) taxes due, plus any additional interest and penalties due at Closing;

(iv) Union Central Life Insurance Company- Nine Hundred Thousand and 00/100 Dollars ($900,000.00)- representing an agreed reduced payoff of the Note and Deed of Trust;

(v) Any costs of Closing, including any title insurance premiums and charges survey fees and commissions due the Brokers (estimated to be $72,000.00) pursuant to the Court's Order dated February 13, 2009 and prorations for taxes for the year of closing (if Closing occurs after December 31, 2009);

(vi) U.S. Trustee fees of $6850.00.

(vii) Legal fees of $7500.00 to Craig Cavalier, counsel for Debtor.

(viii) The balance of the proceeds, estimated to be Fifty-Seven Thousand Four Hundred Fifty-Six and 24/100 Dollars ($57,456.24), or any lesser amount, shall be

C:\Documents and Settings\Craig Cavalier\My Documents\DOCUMENT\Johnson\8440\clean Bankrupicy Sale Order 200pm revised.docx

US 210689v.2

retained by the title company and following the Closing distributed to Union Central Life Insurance Company.

5.      The sale of the Property to Schneidau shall be made free and clear of all liens, claims, interests and encumbrances, including all ad valorem tax liens, except ad valorem taxes that become due for subsequent tax years after 2009, which shall be paid at Closing as set forth above.

6.      Upon the consummation of the sale, all persons holding any lien, claim, interest or encumbrance against the Property or the Debtor of any kind or nature whatsoever, including all taxing authorities(except to the extent set forth herein), are prohibited from asserting, prosecuting or otherwise pursuing such lien, claim, interest or encumbrance against Schneidau or against the Property.

7.      The Debtor is also authorized to pay from the sale proceeds any recording fees, certificate transfer fees, title insurance premiums and fees, and other miscellaneous expenses/charges incident to closing the sale.  The Debtor is also authorized to execute all documents necessary to effectuate the sale, including but not limited to, a bill of sale conveying all right, title and interest in and to the Property to Schneidau, an assignment of the Ground Lease (hereinafter defined), and estoppel certificates that may be required by Detering Properties, Ltd.

8. By Order dated October 5, 2009, the Debtor has previously assumed the ground lease by and between the Debtor and Detering Properties, Ltd. (as amended, the "Ground Lease") and hat Ground Lease is hereby ordered assigned to Schneidau (subject to payment of the rent and property taxes as set forth above) and assumed by Schneidau as of the date and time of the Closing.

C:\Documents and Settings\Craig Cavalier\My Documents\DOCUMENT\Johnson\8440\clean Bankruptcy Sale Order 200pm revised.docx

US 210689v.2

9. Upon the Debtor's or Schneidau's request, any and all holders of any liens or encumbrances filed of public record or arising by statute shall execute a release of such liens and encumbrances as, but only to the extent that, they affect the Property.  If any person or entity that has filed financing statements, mortgages, mechanics liens, abstracts, lis pendens or other documents evidencing a lien or encumbrance in any of the Property shall not have delivered to the Debtor, prior to the closing of the sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such liens, claims, interests or encumbrances, the filing or recording of a certified copy of this Order shall constitute conclusive evidence of the release of all liens and encumbrances against the Property.

10.    To the extent provided under Title 11 and the applicable provisions of Title 28, the Court retains jurisdiction to interpret and enforce the provisions of this Order.

11.    The transactions contemplated by this Order are undertaken by Schneidau in good faith, as that term is used in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale to Schneidau unless such authorization is duly stayed pending such appeal prior to the closing.  Schneidau is entitled to all of the protections afforded by 11 U.S.C. § 363(m).The Debtor has complied with the notice requirements of both federal Bankruptcy Rule 6004(a) and 2002(a).

12.    Pursuant to the parties' agreement, the Court waives the stay provisions of Bankruptcy Rule 6004(h) of the Bankruptcy Code.

13.    This terms and conditions of this Order shall survive the dismissal of the case.

SIGNED this 31st day of Dec. , 2009

THE HONORABLE JEFF BOHM
UNITED STATES BANKRUPTCY JUDGE

**APPROVED by:**

**CRAIG H. CAVALIER, ATTORNEY AT LAW**

By:

    Craig H. Cavalier
    Federal I.D. No. 2958
    State Bar No. 04022075
    3355 West Alabama, Suite 1160
    Houston, Texas 77098
    (713) 621-4720 - Telephone
    (713) 621-4779 – Telefax
    ccavalier@cavalierlaw.com
    *Attorney for 8440 Westpark, LLC*

**STEPHEN SCHNEIDAU, TRUSTEE**

By:

    E. Scot Dixon
    Counsel
    Vinson & Elkins LLP
    First City Tower
    1001 Fannin Street, Suite 2500
    Houston, TX 77002-6760
    Tel 713.758.3373
    Fax 713.615.5373
    Attorney for Stephen Schneidau, Trustee

C:\Documents and Settings\Craig Cavalier\My Documents\DOCUMENT\Johnson\8440\clean Bankruptcy Sale Order 200pm revised.docx

US 210689v.2

**APPROVED by:**

**CRAIG H. CAVALIER, ATTORNEY AT LAW**

By: _____
Craig H. Cavalier
Federal I.D. No. 2958
State Bar No. 04022075
3355 West Alabama, Suite 1160
Houston, Texas  77098
(713) 621-4720 - Telephone
(713) 621-4779 – Telefax
ccavalier@cavalierlaw.com
*Attorney for 8440 Westpark, LLC*

**STEPHEN SCHNEIDAU, TRUSTEE**

By: _____
E. Scot Dixon
State Bar No. 00787373
Counsel
Vinson & Elkins LLP
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel 713.758.3373
Fax 713.615.5373
Attorney for Stephen Schneidau, Trustee

C:\Documents and Settings\102457\Desktop\clean Bankruptcy Sale Order 200pm revised.docx

US 210689v.2

BROWN McCAROLL, LLP

By: _____ by CAC w/ permission

Michael P. Ridulfo
State Bar No. 16902020
1111 Bagby Street, 47th Floor
Houston, TX 77002
(713) 529-3110 - Telephone
(713) 525-6295 – Telefax
mridulfo@mailbmc.com
*Counsel for Union Central Life Insurance Company*

MINOR & BAIR, PLLC

By: _____ w/ permission by CAC

Sterling A. Minor
State Bar No. 14186600
808 Travis Street, Suite 1418
Houston TX 77002-5706
(713) 223-8585 - Telephone
(713) 223-4324 - Telefax
sminor@minorbairlaw.com
*Counsel for Detering Properties, Ltd.*

C:\Documents and Settings\Craig Cavalier\My Documents\DOCUMENT\Johnson\8440\clean Bankruptcy Sale Order 200pm revised.docx

US 210689v.2

## EXHIBIT "A"
### (Premises)

METES AND BOUNDS DESCRIPTION
2.2549 ACRES OUT OF
LOT 8, BLOCK 1
WESTPARK CENTER
SECTION FOUR
HOUSTON, HARRIS COUNTY, TEXAS

All that certain 2.2549 acres out of Lot 8, Block 1, Westpark Center, Section Four according to the plat thereof recorded In Volume 126, Page 18, Harris County Map Records and being more particularly described by metes and bounds as follows:

BEGINNING at a found 5/8" iron rod marking the south end of a 10' radius cutback at the intersection of the north right-of-way line of Westpark Drive (120' wide) and the west right-of-way line of Westholme Drive (60' wide);

THENCE S 85°19'01" W – 194.24', with the said north right-of-way line to a found 5/8" iron rod for corner;

THENCE N 00°30'51" W – 491.36' to a found 5/8" iron rod for corner;

THENCE N 89°29'09" E – 203.00', with the south line of a called 3.0561 acre tract of land described in a deed dated 04-25-2002 from Aramus U.S.A., Inc. to Epix, Ltd. filed in the Official Public Records of Real Property of Harris County, Texas at Clerk's File No. V-772943, Film Code No. 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 to a found 5/8" iron rod with cap for corner;

THENCE S 00°30'51" E – 467.26', with the west right-of-way line of said Westholme Drive, to a found 5/8" iron rod marking the north end of said 10' radius cutback and the Point of Curvature of a curve to the right having a central angle of 85°49'52", a radius of 10.00';

THENCE in a southwesterly direction, with said  curve to the right for an arc distance of 14.98' to the POINT OF BEGINNING and containing 2.2549 acres (98,224 square feet) of land, more or less.

EXHIBIT
**B**

TEXAS ASSOCIATION OF REALTORS®
## COMMERCIAL CONTRACT - IMPROVED PROPERTY
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2005

1. **PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

   Seller: 8440 Westpark, LLC  ATTN: Doug Johnson
   Address: 8440 Westpark, Houston, TX 77063
   Phone: _____ Fax: _____
   E-mail: _____

   Buyer: Stephen Schneidan, Trustee
   Address: 1330 Post Oak Boulevard, Suite 2700, Houston, TX 77056
   Phone: (713) 963-2822 Fax: _____
   E-mail: _____

2. **PROPERTY:**

   A. "Property" means that real property situated in _____ Harris _____ County, Texas at
      8440 Westpark
      (address) and that is legally described on the attached Exhibit ____ A ____ or as follows:

   B. Seller will sell and convey the Property together with:
      (1) all buildings, improvements, and fixtures;
      (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
      (3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
      (4) Seller's interest in all licenses and permits related to the Property;
      (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
      (6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
      (7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except: _____.

   (Describe any exceptions, reservations, or restrictions in Paragraph 12 or an addendum.)
   (If the Property is a condominium, attach condominium addendum.)

3. **SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

   A. Cash portion payable by Buyer at closing ........................................ $ _____1,200,000.00_____
   B. Sum of all financing described in Paragraph 4 ........................ $ _____
   C. Sales price (sum of 3A and 3B) ........................................ $ _____1,200,000.00_____

(TAR-1801) 10-18-05          Initialed for Identification by Buyer _____ and Seller _____          Page 1 of 13

Cushman & Wakefield of Texas, Inc. 1330 Post Oak Blvd, Suite 2700, Houston TX 77056·
Phone: 7138771700    Fax: (713) 877-1965    Whitney
Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com

KIPP contract

Commercial Contract - Improved Property concerning _____ 8440 Westpark _____

4.  FINANCING: Buyer will finance the portion of the sales price under Paragraph 3B as follows:

☐  A.  Third Party Financing: One or more third party loans in the total amount of $ _____ . This
        contract:
    ☐   (1) is not contingent upon Buyer obtaining third party financing.
    ☐   (2) is contingent upon Buyer obtaining third party financing in accordance with the attached Commercial
            Contract Financing Addendum.

☐  B.  Assumption: In accordance with the attached Commercial Contract Financing Addendum, Buyer will
        assume the existing promissory note secured by the Property, which balance at closing will be
        $ _____ :

☐  C.  Seller Financing: The delivery of a promissory note and deed of trust from Buyer to Seller under the
        terms of the attached Commercial Contract Financing Addendum in the amount of $ _____

5.  EARNEST MONEY:

    A.  Not later than 3 days after the effective date, Buyer must deposit $ 50,000.00 _____ as earnest
        money with Old Republic Title Company _____ ATTN: Tom Osborne
        (escrow agent) at 777 Post Oak Boulevard, Suite 240, Houston, TX 77056
        _____ (address). If Buyer fails to timely deposit the earnest
        money, Seller may terminate this contract by providing written notice to Buyer before Buyer deposits the
        earnest money and may exercise Seller's remedies under Paragraph 15.

    B.  Buyer will deposit an additional amount of $ 100,000.00 _____ with the escrow agent to be made
        part of the earnest money on or before:
        ☒  (i)  ___two___ days after Buyer's right to terminate under Paragraph 7B expires; or
        ☐  (ii) _____
        Buyer will be in default if Buyer fails to deposit the additional amount required by this Paragraph 5B
        within 3 days after Seller notifies Buyer that Buyer has not timely deposited the additional amount.

    C.  Buyer may instruct the escrow agent to deposit the earnest money in an interest-bearing account at a
        federally insured financial institution and to credit any interest to Buyer.

6.  TITLE POLICY, SURVEY, AND UCC SEARCH:

    A.  Title Policy:

        (1) Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy)
            issued by _____ Old Republic Title Company _____ (title company)
            in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title
            policy, subject only to:
            (a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and
            (b) the standard printed exceptions contained in the promulgated form of title policy unless this
                contract provides otherwise.

        (2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary
            lines, or any encroachments or protrusions, or any overlapping improvements:
            ☐  (a) will not be amended or deleted from the title policy.
            ☒  (b) will be amended to read "shortages in areas" at the expense of  ☒ Buyer ☐ Seller.

        (3) Buyer may object to any restrictive covenants on the Property within the time required under
            Paragraph 6D.

        (4) Within _____ days after the effective date, Seller will furnish Buyer a commitment for title insurance
            (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller
            authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's
            address.

(TAR-1601) 10-18-05      Initialed for Identification by Buyer _LS_ and Seller _PWC_          Page 2 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com          KIPP contract

Commercial Contract - Improved Property concerning _____ 8440 Westpark _____

B.  Survey: Within __10__ days after the effective date:

☐  (1) Buyer will obtain a survey of the Property at Buyer's expense and deliver a copy of the survey to Seller. The survey must be made in accordance with the Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

☒  (2) Seller, at Seller's expense, will furnish Buyer a survey of the Property dated after the effective date. The survey must be made in accordance with the Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

☐  (3) Seller will deliver to Buyer and the title company a true and correct copy of Seller's existing survey of the Property dated _____ along with an affidavit required by the title company for approval of the survey. If the survey is not acceptable to the title company, Seller, at Seller's expense, will obtain a survey acceptable to the title company and deliver the acceptable survey to the buyer and the title company, within 15 days after Seller receives notice that the existing survey is not acceptable to the title company. The closing date will be extended daily up to 15 days if necessary for Seller to deliver an acceptable survey within the time required.

C.  UCC Search:

☐  (1) Within __10__ days after the effective date, Seller, at Seller's expense, will furnish Buyer a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.

☒  (2) Buyer does not require Seller to furnish a UCC search.

D.  Buyer's Objections to the Commitment, Survey, and UCC Search:

(1) Within __30__ days after Buyer receives the commitment, copies of the documents evidencing title exceptions, any required survey, and any required UCC search, Buyer may object to matters disclosed in the items if: (a) the matters disclosed constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing or Buyer will assume at closing; or (b) the items show that any part of the Property lies in a special flood hazard area (an "A" or "V" zone as defined by FEMA). If Paragraph 6B(1) applies, Buyer is deemed to receive the survey on the earlier of: (i) the date Buyer actually receives the survey; or (ii) the deadline specified in Paragraph 6B.

(2) Seller may, but is not obligated to, cure Buyer's timely objections within 15 days after Seller receives the objections. The closing date will be extended as necessary to provide such time to cure the objections. If Seller fails to cure the objections by the time required, Buyer may terminate this contract by providing written notice to Seller within 5 days after the time by which Seller must cure the objections. If Buyer terminates, the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer.

(3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object except that Buyer will not waive the requirements in Schedule C of the commitment.

7.  PROPERTY CONDITION:

A.  Present Condition: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing: "As is - Where is"

_____

_____

_____

(TAR-1801) 10-18-05        Initialed for identification by Buyer _SS_ and Seller _MW_                Page 3 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com          KIPP contract

Commercial Contract - Improved Property concerning _____ 8440 Westpark

B. **Feasibility Period:** Buyer may terminate this contract for any reason within _____ 60 45 _____ days after the effective date (feasibility period) by providing Seller written notice of termination. *(Check only one box.)*

☑ (1) If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $ 100.00 _____ that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the escrow agent. The independent consideration is to be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(1) or if Buyer fails to timely deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.

☐ (2) Not later than 3 days after the effective date, Buyer must pay Seller $ _____ as independent consideration for Buyer's right to terminate by tendering such amount to Seller or Seller's agent. If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer and Seller will retain the independent consideration. The independent consideration will be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(2) or if Buyer fails to timely pay the independent consideration, Buyer will not have the right to terminate under this Paragraph 7B.

C. **Inspections, Studies, or Assessments:**

(1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

(2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspections, studies, or assessments.

(3) Buyer must:
(a) employ only trained and qualified inspectors and assessors;
(b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
(c) abide by any reasonable entry rules or requirements of Seller;
(d) not interfere with existing operations or occupants of the Property; and
(e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

(4) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. This paragraph survives termination of this contract.

D. **Property Information:**

(1) Delivery of Property Information: Within _____ 10 _____ days after the effective date, Seller will deliver to Buyer: All of the following that are in his possession
☑ (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;
☑ (b) copies of all current leases pertaining to the Property, including any modifications, supplements, or amendments to the leases;
☑ (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;

(TAR-1801) 10-18-05        Initialed for Identification by Buyer _____ and Seller _____        Page 4 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com        KIPP contract

Commercial Contract - Improved Property concerning _____    8440 Montpass

  ☒ (d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;

  ☒ (e) copies of all current service, maintenance, and management agreements relating to the ownership and operation of the Property;

  ☐ (f) copies of current utility capacity letters from the Property's water and sewer service provider;

  ☒ (g) copies of all current warranties and guaranties relating to all or part of the Property;

  ☐ (h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;

  ☒ (i) copies of all leasing or commission agreements that currently relate to all or part of the Property;

  ☒ (j) a copy of the "as-built" plans and specifications and plat of the Property;

  ☒ (k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;

  ☐ (l) a copy of Seller's income and expense statement for the Property from _____ to _____ ;

  ☒ (m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;

  ☐ (n) real & personal property tax statements for the Property for the previous 2 calendar years; and

  ☐ (o) _____

  (2) **Return of Property Information:** If this contract terminates for any reason, Buyer will, not later than 10 days after the termination date: (a) return to Seller all those items described in Paragraph 7D(1) that Seller delivered to Buyer and all copies that Buyer made of those items; and (b) deliver copies of all inspection and assessment reports related to the Property that Buyer completed or caused to be completed. This Paragraph 7D(2) survives termination of this contract.

E. **Contract Affecting Operations:** Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property, or any of the personal property or other items described in Paragraph 2B or sold under this contract. After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

**8.  LEASES:**

A. Each written lease Seller is to assign to Buyer under this contract must be in full force and effect according to its terms. Seller may not enter into any new lease, fail to comply with any existing lease, or make any amendment or modification to any existing lease without Buyer's written consent. Seller must disclose, in writing, if any of the following exist at the time Seller provides the leases to the Buyer or subsequently occur before closing:

  (1) any failure by Seller to comply with Seller's obligations under the leases;

  (2) any circumstances under any lease that entitle the tenant to terminate the lease or seek any offsets or damages;

  (3) any non-occupancy of the leased premises by a tenant;

  (4) any advance sums paid by a tenant under any lease;

  (5) any concessions, bonuses, free rents, rebates, brokerage commissions, or other matters that affect any lease; and

  (6) any amounts payable under the leases that have been assigned or encumbered, except as security for loan(s) assumed or taken subject to under this contract.

B. **Estoppel Certificates.** Within ___30___ days after the effective date, Seller will deliver to Buyer estoppel certificates signed not earlier than ___August 30, 2009___ by each tenant that leases space in the Property. The estoppel certificates must state:

(TAR-1801) 10-18-05    Initialed for identification by Buyer _____ and Seller _____    Page 6 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com    KIPP contract

Commercial Contract – Improved Property concerning ................................ 6440 Westpark

(1) that no default exists under the lease by the landlord or tenant as of the date the estoppel certificate is signed;
(2) the amount of the scheduled rents to be paid through the end of the lease and any rental payments that have been paid in advance;
(3) the amount of any security deposit;
(4) the amount of any offsets tenant is entitled against rent;
(5) the expiration date of the lease;
(6) a description of any renewal options; and
(7) _____

## 9. BROKERS:

A. The brokers to this sale are:

| Cushman & Wakefield of Texas, Inc. | | Naudh & Mills | |
|---|---|---|---|
| Cooperating Broker | License No. | Principal Broker | License No. |
| 1330 Post Oak Boulevard, Suite 2700 | | 1330 Post Oak Boulevard, Suite 2400 | |
| Address | | Address | |
| Houston, Texas  77056 | | Houston, Texas  77056 | |
| (713) 963-2828 | (713) 877-1965 | (713) 599-9439 | |
| Phone | Fax | Phone | Fax |
| E-mail: | | E-mail: | |

Cooperating Broker represents buyer.

Principal Broker: *(Check only one box)*
☒ represents Seller only.
☐ represents Buyer only.
☐ is an intermediary between Seller and Buyer.

B. Fees: *(Check only one box.)*

☐ (1) Seller will pay Principal Broker the fee specified by separate written commission agreement between Principal Broker and Seller. Principal Broker will pay Cooperating Broker the fee specified in the Agreement Between Brokers found below the parties' signatures to this contract.

☒ (2) At the closing of this sale, Seller will pay:

Cooperating Broker a total cash fee of:
☒ 3.000 % of the sales price.
☐

Principal Broker a total cash fee of:
☒ 3.000 % of the sales price.
☐

The cash fees will be paid in _____ Harris _____ County, Texas. Seller authorizes escrow agent to pay the brokers from the Seller's proceeds at closing.

*NOTICE: Chapter 62, Texas Property Code, authorizes a broker to secure an earned commission with a lien against the Property.*

C. The parties may not amend this Paragraph 9 without the written consent of the brokers affected by the amendment.

## 10. CLOSING:

A. The closing of the sale will be on or before _____ 12/15/09 _____ or 10/28/2009 or 30 days after the expiration of feasibility period _____ or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (the closing date).

(TAR-1801) 10-18-05          Initialed for identification by Buyer _____ and Seller _____          Page 6 of 13

Commercial Contract - Improved Property concerning _____ 8440 Westpark

B.  If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 15.

C.  At closing, Seller will execute and deliver to Buyer, at Seller's expense, a ☐ general ☒ special warranty deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property:
(1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, unless securing loans Buyer assumes;
(2) without any assumed loans in default; and
(3) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract.

D.  At closing, Seller, at Seller's expense, will also deliver to Buyer:
(1) tax statements showing no delinquent taxes on the Property;
(2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;
(3) an assignment of all leases to or on the Property;
(4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:
(a) licenses and permits;
(b) maintenance, management, and other contracts; and
(c) warranties and guaranties;
(5) a rent roll current on the day of the closing certified by Seller as true and correct;
(6) evidence that the person executing this contract is legally capable and authorized to bind Seller;
(7) an affidavit acceptable to the escrow agent stating that Seller is not a foreign person or, if Seller is a foreign person, a written authorization for the escrow agent to: (i) withhold from Seller's proceeds an amount sufficient to comply applicable tax law; and (ii) deliver the amount to the Internal Revenue Service together with appropriate tax forms; and
(8) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary.

E.  At closing, Buyer will:
(1) pay the sales price in good funds acceptable to the escrow agent;
(2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;
(3) sign and send to each tenant in the Property a written statement that:
(a) acknowledges Buyer has received and is responsible for the tenant's security deposit; and
(b) specifies the exact dollar amount of the security deposit;
(4) sign an assumption of all leases then in effect; and
(5) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

F.  Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

11. POSSESSION: Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition with any repairs Seller is obligated to complete under this contract, ordinary wear and tear excepted. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

(TAR-1801) 10-18-05          Initialed for Identification by Buyer ___ and Seller ___          Page 7 of 13

Commercial Contract - Improved Property concerning _____ **8440 Westpark**

**12. SPECIAL PROVISIONS:** *(identify exhibit if special provisions are contained in an attachment.)*

See Exhibit C

**13. SALES EXPENSES:**

A. Seller's Expenses: Seller will pay for the following at or before closing:
   (1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;
   (2) release of Seller's loan liability, if applicable;
   (3) tax statements or certificates;
   (4) preparation of the deed and any bill of sale;
   (5) one-half of any escrow fee;
   (6) costs to record any documents to cure title objections that Seller must cure; and
   (7) other expenses that Seller will pay under other provisions of this contract.

B. Buyer's Expenses: Buyer will pay for the following at or before closing:
   (1) all loan expenses and fees;
   (2) preparation fees of any deed of trust;
   (3) recording fees for the deed and any deed of trust;
   (4) premiums for flood and hazard insurance as may be required by Buyer's lender;
   (5) one-half of any escrow fee; and
   (6) other expenses that Buyer will pay under other provisions of this contract.

**14. PRORATIONS:**

A. Prorations:

   (1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.

   (2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 14A(2) survives closing.

   (3) If Buyer assumes a loan or is taking the Property subject to an existing lien, Seller will transfer all reserve deposits held by the lender for the payment of taxes, insurance premiums, and other

(TAR-1801) 10-18-05          Initialed for identification by Buyer _____ and Seller _____          Page 8 of 13

Produced with ZipForm™ by RE Formsnet, LLC 18025 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com          KIPP contact

**EXHIBIT "A"**
**(Premises)**

METES AND BOUNDS DESCRIPTION
2.2549 ACRES OUT OF
LOT 8, BLOCK 1
WESTPARK CENTER
SECTION FOUR
HOUSTON, HARRIS COUNTY, TEXAS

All that certain 2.2549 acres out of Lot 8, Block 1, Westpark Center, Section Four according to the plat thereof recorded in Volume 126, Page 18, Harris County Map Records and being more particularly described by metes and bounds as follows:

BEGINNING at a found 5/8" iron rod marking the south end of a 10' radius cutback at the intersection of the north right-of-way line of Westpark Drive (120' wide) and the west right-of-way line of Westholme Drive (60' wide);

THENCE S 85°19'01" W – 194.24', with the said north right-of-way line to a found 5/8" iron rod for corner;

THENCE N 00°30'51" W – 491.35' to a found 5/8" iron rod for corner;

THENCE N 89°29'09" E – 203.00', with the south line of a called 3.0561 acre tract of land described in a deed dated 04-25-2002 from Aramus U.S.A., Inc. to Epix, Ltd. filed in the Official Public Records of Real Property of Harris County, Texas at Clerk's File No. V-772943, Film Code No. 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 to a found 5/8" iron rod with cap for corner;

THENCE S 00°30'51" E – 467.26', with the west right-of-way line of said Westholme Drive, to a found 5/8" iron rod marking the north end of said 10' radius cutback and the Point of Curvature of a curve to the right having a central angle of 85°49'52", a radius of 10.00';

THENCE in a southwesterly direction, with said curve to the right for an arc distance of 14.98' to the POINT OF BEGINNING and containing 2.2549 acres (98,224 square feet) of land, more or less.

Houston 3103983v.2

**EXHIBIT**

**B**

### TEXAS ASSOCIATION OF REALTORS®
## COMMERCIAL CONTRACT - IMPROVED PROPERTY
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2005

1. **PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

   Seller: 8440 Westpark, LLC, ATTN: Doug Johnson
   Address: 8440 Westpark, Houston, TX 77063
   Phone: _____ Fax: _____
   E-mail: _____

   Buyer: Stephen Schneider, Trustee
   Address: 1330 Post Oak Boulevard, Suite 2700, Houston, TX 77056
   Phone: (713) 963-2822 Fax: _____
   E-mail: _____

2. **PROPERTY:**

   A. "Property" means that real property situated in _____ Harris _____ County, Texas at
   _____ 8440 Westpark _____
   (address) and that is legally described on the attached Exhibit _____ A _____ or as follows:

   B. Seller will sell and convey the Property together with:
   (1) all buildings, improvements, and fixtures;
   (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
   (3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
   (4) Seller's interest in all licenses and permits related to the Property;
   (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
   (6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
   (7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except: _____ .
   (Describe any exceptions, reservations, or restrictions in Paragraph 12 or an addendum.)
   (If the Property is a condominium, attach condominium addendum.)

3. **SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

   A. Cash portion payable by Buyer at closing . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____1,200,000.00
   B. Sum of all financing described in Paragraph 4 . . . . . . . . . . . . . . . . . . . . . . . . $ _____
   C. Sales price (sum of 3A and 3B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____1,200,000.00

(TAR-1801) 10-18-05          Initialed for Identification by Buyer _____ and Seller _____          Page 1 of 13

Cushman & Wakefield of Texas, Inc. 1330 Post Oak Blvd., Suite 2700,  Houston TX 77056.
Phone: 7138771700          Fax: (713) 877-1965          Whitney          KIPP contract
Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com

Commercial Contract - Improved Property concerning _____ 8440 Westpark

**4. FINANCING:** Buyer will finance the portion of the sales price under Paragraph 3B as follows:

☐ A. *Third Party Financing:* One or more third party loans in the total amount of $ _____. This contract:
    ☐ (1) is *not* contingent upon Buyer obtaining third party financing.
    ☐ (2) is contingent upon Buyer obtaining third party financing in accordance with the attached Commercial Contract Financing Addendum.

☐ B. *Assumption:* In accordance with the attached Commercial Contract Financing Addendum, Buyer will assume the existing promissory note secured by the Property, which balance at closing will be $ _____ :

☐ C. *Seller Financing:* The delivery of a promissory note and deed of trust from Buyer to Seller under the terms of the attached Commercial Contract Financing Addendum in the amount of $ _____ .

**5. EARNEST MONEY:**

  A. Not later than 3 days after the effective date, Buyer must deposit $ 50,000.00 _____ as earnest money with Old Republic Title Company _____ ATTN: Tom Osborne (escrow agent) at 777 Post Oak Boulevard, Suite 240, Houston, TX 77056 _____ (address). If Buyer fails to timely deposit the earnest money, Seller may terminate this contract by providing written notice to Buyer before Buyer deposits the earnest money and may exercise Seller's remedies under Paragraph 15.

  B. Buyer will deposit an additional amount of $ 100,000.00 with the escrow agent to be made part of the earnest money on or before:
    ☒ (i) ___two___ days after Buyer's right to terminate under Paragraph 7B expires; or
    ☐ (ii) _____
    Buyer will be in default if Buyer fails to deposit the additional amount required by this Paragraph 5B within 3 days after Seller notifies Buyer that Buyer has not timely deposited the additional amount.

  C. Buyer may instruct the escrow agent to deposit the earnest money in an interest-bearing account at a federally insured financial institution and to credit any interest to Buyer.

**6. TITLE POLICY, SURVEY, AND UCC SEARCH:**

  A. *Title Policy:*
    (1) Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy) issued by _____ Old Republic Title Company _____ (title company) in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title policy, subject only to:
      (a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and
      (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

    (2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements:
    ☐ (a) will not be amended or deleted from the title policy.
    ☒ (b) will be amended to read "shortages in areas" at the expense of ☒ Buyer ☐ Seller.

    (3) Buyer may object to any restrictive covenants on the Property within the time required under Paragraph 6D.

    (4) Within _____ days after the effective date, Seller will furnish Buyer a commitment for title insurance (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's address.

(TAR-1801) 10-18-05    Initialed for Identification by Buyer ___LS___ and Seller ___PM___    Page 2 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com    KIPP contract

Commercial Contract - Improved Property concerning _____ 8440 Westpark

B. Survey: Within __10__ days after the effective date:

(1) Buyer will obtain a survey of the Property at Buyer's expense and deliver a copy of the survey to Seller. The survey must be made in accordance with the Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

(2) Seller, at Seller's expense, will furnish Buyer a survey of the Property dated after the effective date. The survey must be made in accordance with the Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

(3) Seller will deliver to Buyer and the title company a true and correct copy of Seller's existing survey of the Property dated _____ along with an affidavit required by the title company for approval of the survey. If the survey is not acceptable to the title company, Seller, at Seller's expense, will obtain a survey acceptable to the title company and deliver the acceptable survey to the buyer and the title company within 15 days after Seller receives notice that the existing survey is not acceptable to the title company. The closing date will be extended daily up to 15 days if necessary for Seller to deliver an acceptable survey within the time required.

C. UCC Search:

(1) Within __10__ days after the effective date, Seller, at Seller's expense, will furnish Buyer a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.

(2) Buyer does not require Seller to furnish a UCC search.

D. Buyer's Objections to the Commitment, Survey, and UCC Search:

(1) Within __30__ days after Buyer receives the commitment, copies of the documents evidencing title exceptions, any required survey, and any required UCC search, Buyer may object to matters disclosed in the items if: (a) the matters disclosed constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing or Buyer will assume at closing; or (b) the items show that any part of the Property lies in a special flood hazard area (an "A" or "V" zone as defined by FEMA). If Paragraph 6B(1) applies, Buyer is deemed to receive the survey on the earlier of: (i) the date Buyer actually receives the survey; or (ii) the deadline specified in Paragraph 6B.

(2) Seller may, but is not obligated to, cure Buyer's timely objections within 15 days after Seller receives the objections. The closing date will be extended as necessary to provide such time to cure the objections. If Seller fails to cure the objections by the time required, Buyer may terminate this contract by providing written notice to Seller within 5 days after the time by which Seller must cure the objections. If Buyer terminates, the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer.

(3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object except that Buyer will not waive the requirements in Schedule C of the commitment.

7. PROPERTY CONDITION:

A. Present Condition: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing: "As is - Where is"

_____

_____

_____

(TAR-1801) 10-18-05        Initialed for identification by Buyer _____ and Seller _____        Page 3 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipform.com        KIPP contract

Commercial Contract - Improved Property concerning _____ **8440 Westpark**

B. **Feasibility Period:** Buyer may terminate this contract for any reason within ~~60~~ **45** days after the effective date (feasibility period) by providing Seller written notice of termination. *(Check only one box.)*

☒ (1) If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $ **100.00** _____ that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the escrow agent. The independent consideration is to be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(1) or if Buyer fails to timely deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.

☐ (2) Not later than 3 days after the effective date, Buyer must pay Seller $ _____ as independent consideration for Buyer's right to terminate by tendering such amount to Seller or Seller's agent. If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer and Seller will retain the independent consideration. The independent consideration will be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(2) or if Buyer fails to timely pay the independent consideration, Buyer will not have the right to terminate under this Paragraph 7B.

C. **Inspections, Studies, or Assessments:**

(1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

(2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspections, studies, or assessments.

(3) Buyer must:
    (a) employ only trained and qualified inspectors and assessors;
    (b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
    (c) abide by any reasonable entry rules or requirements of Seller;
    (d) not interfere with existing operations or occupants of the Property; and
    (e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

(4) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. This paragraph survives termination of this contract.

D. **Property Information:**

(1) **Delivery of Property Information:** Within ___ **10** ___ days after the effective date, Seller will deliver to Buyer: All of the following that are in his possession
☒ (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;
☒ (b) copies of all current leases pertaining to the Property, including any modifications, supplements, or amendments to the leases;
☒ (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;

(TAR-1801) 10-16-05    Initialed for Identification by Buyer ____ and Seller ____    Page 4 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18079 Fifteen Mile Road, Fraser, Michigan 48026 www.zipform.com

KIPP contract

Commercial Contract - Improved Property concerning _____ _____ 8440 Westpark

(d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;

(e) copies of all current service, maintenance, and management agreements relating to the ownership and operation of the Property;

(f) copies of current utility capacity letters from the Property's water and sewer service provider;

(g) copies of all current warranties and guaranties relating to all or part of the Property;

(h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;

(i) copies of all leasing or commission agreements that currently relate to all or part of the Property;

(j) a copy of the "as-built" plans and specifications and plat of the Property;

(k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;

(l) a copy of Seller's income and expense statement for the Property from _____ to _____;

(m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;

(n) real & personal property tax statements for the Property for the previous 2 calendar years; and

(o) _____

_____

_____

_____

(2) **Return of Property Information:** If this contract terminates for any reason, Buyer will, not later than 10 days after the termination date: (a) return to Seller all those items described in Paragraph 7D(1) that Seller delivered to Buyer and all copies that Buyer made of those items; and (b) deliver copies of all inspection and assessment reports related to the Property that Buyer completed or caused to be completed. This Paragraph 7D(2) survives termination of this contract.

E. **Conduct Affecting Operations:** Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property, or any of the personal property or other items described in Paragraph 2B or sold under this contract. After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

8. **LEASES:**

A. Each written lease Seller is to assign to Buyer under this contract must be in full force and effect according to its terms. Seller may not enter into any new lease, fail to comply with any existing lease, or make any amendment or modification to any existing lease without Buyer's written consent. Seller must disclose, in writing, if any of the following exist at the time Seller provides the leases to the Buyer or subsequently occur before closing:

(1) any failure by Seller to comply with Seller's obligations under the leases;

(2) any circumstances under any lease that entitle the tenant to terminate the lease or seek any offsets or damages;

(3) any non-occupancy of the leased premises by a tenant;

(4) any advance sums paid by a tenant under any lease;

(5) any concessions, bonuses, free rents, rebates, brokerage commissions, or other matters that affect any lease; and

(6) any amounts payable under the leases that have been assigned or encumbered, except as security for loan(s) assumed or taken subject to under this contract.

B. **Estoppel Certificates:** Within _____ 30 _____ days after the effective date, Seller will deliver to Buyer estoppel certificates signed not earlier than _____ August 30, 2009 _____ by each tenant that leases space in the Property. The estoppel certificates must state:

(TAR-1801) 10-18-05     Initialed for identification by Buyer _____ and Seller _____     Page 6 of 13

Commercial Contract – Improved Property concerning ____ ____ ____ 5440 Westpark

(1) that no default exists under the lease by the landlord or tenant as of the date the estoppel certificate is signed;
(2) the amount of the scheduled rents to be paid through the end of the lease and any rental payments that have been paid in advance;
(3) the amount of any security deposit;
(4) the amount of any offsets tenant is entitled against rent;
(5) the expiration date of the lease;
(6) a description of any renewal options; and
(7) ____ ____ ____ ____ ____

**9. BROKERS:**

A. The brokers to this sale are:

| Cushman & Wakefield of Texas, Inc. | | Smith & Ellis | |
|---|---|---|---|
| Cooperating Broker | License No. | Principal Broker | License No. |
| 1330 Post Oak Boulevard, Suite 2700 | | 1330 Post Oak Boulevard, Suite 1400 | |
| Address | | Address | |
| Houston, Texas  77056 | | Houston, Texas  77056 | |
| (713) 963-2828 | (713) 877-1965 | (713) 599-0135 | |
| Phone | Fax | Phone | Fax |
| E-mail: | | E-mail: | |

Cooperating Broker represents buyer.

Principal Broker: *(Check only one box)*
☒ represents Seller only.
☐ represents Buyer only.
☐ is an intermediary between Seller and Buyer.

B. Fees: *(Check only one box.)*

☐ (1) Seller will pay Principal Broker the fee specified by separate written commission agreement between Principal Broker and Seller. Principal Broker will pay Cooperating Broker the fee specified in the Agreement Between Brokers found below the parties' signatures to this contract.

☒ (2) At the closing of this sale, Seller will pay:

Cooperating Broker a total cash fee of:
☒ 3.000 % of the sales price.
☐

Principal Broker a total cash fee of:
☒ 3.000 % of the sales price.
☐

The cash fees will be paid in ____ Harris ____ County, Texas. Seller authorizes escrow agent to pay the brokers from the Seller's proceeds at closing.

*NOTICE: Chapter 62, Texas Property Code, authorizes a broker to secure an earned commission with a lien against the Property.*

C. The parties may not amend this Paragraph 9 without the written consent of the brokers affected by the amendment.

**10. CLOSING:**

A. The closing of the sale will be on or before ____ 12/15/09 ____ 10/25/2009 OK ____ 30 days after the expiration of feasibility period ____ or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (the closing date).

(TAR-1801) 10-18-05        Initialed for identification by Buyer _GS_ and Seller _GM_        Page 6 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com        KIPP contract

Commercial Contract - Improved Property concerning _____ 8440 Westpark

B. If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 15.

C. At closing, Seller will execute and deliver to Buyer, at Seller's expense, a ☐ general ☒ special warranty deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property:
   (1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, unless securing loans Buyer assumes;
   (2) without any assumed loans in default; and
   (3) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract.

D. At closing, Seller, at Seller's expense, will also deliver to Buyer:
   (1) tax statements showing no delinquent taxes on the Property;
   (2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;
   (3) an assignment of all leases to or on the Property;
   (4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:
      (a) licenses and permits;
      (b) maintenance, management, and other contracts; and
      (c) warranties and guaranties;
   (5) a rent roll current on the day of the closing certified by Seller as true and correct;
   (6) evidence that the person executing this contract is legally capable and authorized to bind Seller;
   (7) an affidavit acceptable to the escrow agent stating that Seller is not a foreign person or, if Seller is a foreign person, a written authorization for the escrow agent to: (i) withhold from Seller's proceeds an amount sufficient to comply applicable tax law; and (ii) deliver the amount to the Internal Revenue Service together with appropriate tax forms; and
   (8) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary.

E. At closing, Buyer will:
   (1) pay the sales price in good funds acceptable to the escrow agent;
   (2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;
   (3) sign and send to each tenant in the Property a written statement that:
      (a) acknowledges Buyer has received and is responsible for the tenant's security deposit; and
      (b) specifies the exact dollar amount of the security deposit;
   (4) sign an assumption of all leases then in effect; and
   (5) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

F. Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

11. POSSESSION: Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition with any repairs Seller is obligated to complete under this contract, ordinary wear and tear excepted. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

(TAR-1801) 10-18-05        Initialed for Identification by Buyer ____ and Seller ____        Page 7 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com        KIPP contract

Commercial Contract – Improved Property concerning _____ 9440 Westpark

**12. SPECIAL PROVISIONS:** *(identify exhibit if special provisions are contained in an attachment.)*

See Exhibit C

**13. SALES EXPENSES:**

A. Seller's Expenses: Seller will pay for the following at or before closing:
   (1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;
   (2) release of Seller's loan liability, if applicable;
   (3) tax statements or certificates;
   (4) preparation of the deed and any bill of sale;
   (5) one-half of any escrow fee;
   (6) costs to record any documents to cure title objections that Seller must cure; and
   (7) other expenses that Seller will pay under other provisions of this contract.

B. Buyer's Expenses: Buyer will pay for the following at or before closing:
   (1) all loan expenses and fees;
   (2) preparation fees of any deed of trust;
   (3) recording fees for the deed and any deed of trust;
   (4) premiums for flood and hazard insurance as may be required by Buyer's lender;
   (5) one-half of any escrow fee; and
   (6) other expenses that Buyer will pay under other provisions of this contract.

**14. PRORATIONS:**

A. Prorations:
   (1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.
   (2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 14A(2) survives closing.
   (3) If Buyer assumes a loan or is taking the Property subject to an existing lien, Seller will transfer all reserve deposits held by the lender for the payment of taxes, insurance premiums, and other

(TAR-1801) 10-18-05      Initialed for identification by Buyer _____ and Seller _____      Page 8 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com      KIPP contract

Commercial Contract - Improved Property concerning _____ 8440 Westpark

charges to Buyer at closing and Buyer will reimburse such amounts to Seller by an appropriate adjustment at closing.

B. Rollback Taxes: If Seller changes the use of the Property before closing or if a denial of a special valuation on the Property claimed by Seller results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of Seller. If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obligation of Buyer. This Paragraph 14B survives closing.

C. Rent and Security Deposits: At closing, Seller will tender to Buyer all security deposits and the following advance payments received by Seller for periods after closing: prepaid expenses, advance rental payments, and other advance payments paid by tenants. Rents prorated to one party but received by the other party will be remitted to the party to whom it was prorated within 5 days after the rent is received. This Paragraph 14C survives closing.

**15. DEFAULT:**

A. If Buyer fails to comply with this contract, Buyer is in default and Seller may:
   (1) terminate this contract and receive the earnest money as liquidated damages, thereby releasing the parties from this contract; or
   (2) ~~enforce specific performance, or seek other relief as may be provided by law, or both.~~

B. If, without fault, Seller is unable within the time allowed to deliver the estoppel certificates, survey or the commitment, Buyer may:
   (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as the sole remedy; or
   (2) extend the time for performance up to 15 days and the closing will be extended as necessary.

C. Except as provided in Paragraph 15B, if Seller fails to comply with this contract, Seller is in default and Buyer may:
   (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages, thereby releasing the parties from this contract; or
   (2) enforce specific performance, or seek such other relief as may be provided by law, or both.

**16. CASUALTY LOSS AND CONDEMNATION:**

A. If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Seller must restore the Property to its previous condition as soon as reasonably possible and not later than the closing date. If, without fault, Seller is unable to do so, Buyer may:
   (1) terminate this contract and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer;
   (2) extend the time for performance up to 15 days and closing will be extended as necessary; or
   (3) accept at closing: (i) the Property in its damaged condition; (ii) an assignment of any insurance proceeds Seller is entitled to receive along with the insurer's consent to the assignment; and (iii) a credit to the sales price in the amount of any unpaid deductible under the policy for the loss.

B. If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:
   (1) terminate this contract by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer; or
   (2) appear and defend the condemnation proceedings and any award will, at Buyer's election, belong to: (a) Seller and the sales price will be reduced by the same amount; or (b) Buyer and the sales price will not be reduced.

(TAR-1601) 10-18-05     Initialed for Identification by Buyer  and Seller _____     Page 9 of 13

Commercial Contract - Improved Property concerning _____ 8440 Westpark

**17. ATTORNEY'S FEES:** If Buyer, Seller, any broker, or any escrow agent is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.

**18. ESCROW:**

A. At closing, the earnest money will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer.

B. If both parties make written demand for the earnest money, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties.

C. If one party makes written demand for the earnest money, escrow agent will give notice of the demand by providing to the other party a copy of the demand. If escrow agent does not receive written objection to the demand from the other party within 15 days after the date escrow agent sent the demand to the other party, escrow agent may disburse the earnest money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors.

D. Escrow agent will deduct any independent consideration under Paragraph 7B(1) before disbursing any earnest money to Buyer and will pay the independent consideration to Seller.

E. If escrow agent complies with this Paragraph 18, each party hereby releases escrow agent from all claims related to the disbursal of the earnest money.

F. Notices under this Paragraph 18 must be sent by certified mail, return receipt requested. Notices to escrow agent are effective upon receipt by escrow agent.

**19. MATERIAL FACTS:** To the best of Seller's knowledge and belief: *(Check only one box.)*

☒ A. Seller is not aware of any material defects to the Property except as stated in the attached Property Condition Statement.

☐ B. Except as otherwise provided in this contract, Seller is not aware of:
  (1) any subsurface: structures, pits, waste, springs, or improvements;
  (2) any pending or threatened litigation, condemnation, or assessment affecting the Property;
  (3) any environmental hazards or conditions that materially affect the Property;
  (4) whether the Property is or has been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;
  (5) whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants), or other pollutants or contaminants of any nature now exist or ever existed on the Property;
  (6) any wetlands, as defined by federal or state law or regulation, on the Property;
  (7) any threatened or endangered species or their habitat on the Property;
  (8) any present or past infestation of wood-destroying insects in the Property's improvements;
  (9) any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property;
  (10) any material physical defects in the improvements on the Property; or
  (11) any condition on the Property that violates any law or ordinance.

*(Describe any exceptions to (1)-(11) in Paragraph 12 or an addendum.)*

(TAR-1801) 10-18-05        Initialed for Identification by Buyer _____ and Seller _____        Page 10 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com        KIPP contract

Commercial Contract - Improved Property concerning _____ 3440 Westpark

**20. NOTICES:** All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, or sent by facsimile transmission to the parties addresses or facsimile numbers stated in Paragraph 1. The parties will send copies of any notices to the broker representing the party to whom the notices are sent.

☒ A. Seller also consents to receive any notices by e-mail at Seller's e-mail address stated in Paragraph 1.

☒ B. Buyer also consents to receive any notices by e-mail at Buyer's e-mail address stated in Paragraph 1.

**21. DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**22. AGREEMENT OF THE PARTIES:**

A. This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns.

B. This contract is to be construed in accordance with the laws of the State of Texas.

C. This contract contains the entire agreement of the parties and may not be changed except in writing.

D. If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

E. Addenda which are part of this contract are: *(Check all that apply.)*
☐ (1) Property Description Exhibit identified in Paragraph 2;
☐ (2) Commercial Contract Condominium Addendum;
☐ (3) Commercial Contract Financing Addendum;
☐ (4) Commercial Property Condition Statement;
☐ (5) Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards;
☐ (6) Notice to Purchaser of Real Property in a Water District (MUD);
☐ (7) Addendum for Coastal Area Property;
☐ (8) Addendum for Property Located Seaward of the Gulf Intracoastal Waterway; and
☒ (9) Sale/Lease American with Disabilities Act & Hazardous Materials
     Disclosure; Information on Agency Relationships Disclosure;
     Tax Notice to Buyers & Sellers

*(Note: Counsel for the Texas Association of REALTORS® (TAR) has determined that any of the foregoing addenda which are promulgated by the Texas Real Estate Commission (TREC) or published by TAR are appropriate for use with this form.)*

F. Buyer ☒ may  ☐ may not assign this contract. If Buyer assigns this contract, Buyer will be relieved of any future liability under this contract only if the assignee assumes, in writing, all of Buyer's obligations under this contract.

**23. TIME:** Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or legal holiday, the time for performance is extended until the end of the next day which is not a Saturday Sunday, or legal holiday.

**24. EFFECTIVE DATE:** The effective date of this contract for the purpose of performance of all obligations is the date the escrow agent receipts this contract after all parties execute this contract.

(TAR-1801) 10-18-05        Initialed for Identification by Buyer _____ and Seller _____        Page 11 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com        KIPP contract

Commercial Contract - Improved Property concerning _____   8440 Westpark

**25. ADDITIONAL NOTICES:**

A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property." The real property is described in Paragraph 2 of this contract.

D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code requires a notice regarding coastal area property to be included as part of this contract.

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract.

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract.

H. Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I. Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers.

**26. CONTRACT AS OFFER:** The execution of this contract by the first party constitutes an offer to buy or sell the Property. Unless the other party accepts the offer by 5:00 p.m., in the time zone in which the Property is located, on ~~September 30, 2009~~ the offer will lapse and become null and void.

OCT. 10, 2009                    OCTOBER 15, 2009   DN

          SS

(TAR-1801) 10-18-05        Initialed for Identification by Buyer _____ and Seller _____         Page 12 of 13

Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipform.com          KIPP contract

Commercial Contract - Improved Property concerning _____ 8440 Westpark

**READ THIS CONTRACT CAREFULLY. The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.**

Buyer: Stephen Schneidau, Trustee                 Seller: 8440 Westpark, LLC

By: _____                               By: _____

Printed Name: Stephen Schneidau                    Printed Name: Doug Johnson

Title: _____                             Title: President

Buyer: _____                             Seller: _____

By: _____                                By: _____

Printed Name: _____                      Printed Name: _____

Title: _____                             Title: _____

## AGREEMENT BETWEEN BROKERS

Principal Broker agrees to pay _____ (Cooperating Broker) a fee of $ _____ or _____ % of the sales price when the Principal Broker's fee is received. Escrow agent is authorized and directed to pay Cooperating Broker from Principal Broker's fee at closing. This Agreement Between Brokers supersedes any prior offers and agreements for compensation between brokers.

Cooperating Broker                                 Principal Broker

By: _____                                By: _____

## ATTORNEYS

Buyer's attorney is:                               Seller's attorney is:
Name: _____                              Name: _____
Address: _____                           Address: _____

Phone & Fax _____                        Phone & Fax _____

E-mail _____                             E-mail _____
Buyer's attorney requests copies of documents,     Seller's attorney requests copies of documents,
notices, and other information:                    notices, and other information:
☐ the title company sends to Buyer.                ☐ the title company sends to Seller.
☐ Seller sends to Buyer.                           ☐ Buyer sends to Seller.

## ESCROW RECEIPT

Escrow agent acknowledges receipt of:
☐ A. the contract on this day _____ (effective date);
☐ B. earnest money in the amount of $_____ in the form of _____
on _____
Escrow Agent: Old Republic Title Company          Address: 777 Post Oak Boulevard, Suite 240
                                                   Houston, TX 77056
                                                   Phone & Fax: _____
By: _____
    ATTN: Tom Osborne                              E-mail: _____

(TAR-1801) 10-18-05                                                          Page 13 of 13
Produced with ZipForm™ by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipform.com   KIPP contract

## EXHIBIT A



**EAST TRACT**
**METES AND BOUNDS DESCRIPTION**
**2.2549 ACRES OUT OF**
**LOT 5, BLOCK 1**
**WESTPARK CENTER**
**SECTION FOUR**
**HOUSTON, HARRIS COUNTY, TEXAS**

All that certain 2.2549 acres out of Lot 5, Block 1, Westpark Center, Section Four according to the plat thereof recorded in Volume 126, Page 18, Harris County Map Records and being more particularly described by metes and bounds as follows:

BEGINNING at a found 5/8" iron rod marking the southern end of a circular cutback at the intersection of the north right-of-way line of Westpark Drive (120' wide) and the west right-of-way line of Westholme Drive (60' wide);

THENCE S 85°19'01" W – 194.24', with the said north right-of-way line to a found 5/8" iron rod for corner;

THENCE N 00°30'51" W – 491.35' to a found 5/8" iron rod for corner;

THENCE N 89°29'09" E – 203.00', with the south line of a called 3.0561 acre tract of land described in a deed dated 04-25-2002 from Asamus U.S.A., Inc. to Epix, Ltd. filed in the Official Public Records of Real Property of Harris County, Texas at Clerk File No. V-772843, Film Code No. 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 to a set 5/8" iron rod with cap for corner;

THENCE S 00°30'51" E – 467.26', with the west right-of-way line of Westholme Drive (60' wide), to a found 5/8" iron rod marking the Point of Curvature of a curve to the right having a central angle of 85°49'52", a radius of 10.00';

THENCE in a southwesterly direction, with said curve and said west right-of-way line an arc distance of 14.98' to the POINT OF BEGINNING and containing 2.2549 acres (98,224 square feet) of land, more or less.
Compiled from survey by:


Prejean & Company, Inc.
surveying/mapping

277-2A.doc
05-18-2004

## EXHIBIT B

A. The following will be copied on all documentation:

- Stephen Schneidau
  Cushman & Wakefield of Texas, Inc.
  1330 Post Oak Boulevard, Suite 2700
  Houston, Texas  77056
  713.963.2622

- Eugene Lee
  Linback Group
  3900 Essex Lane, Suite 1200
  Houston, Texas  77027
  713.966.5878

- Vinson & Elkins
  Attn: Scott Dixon
  1001 Fannin Street, Suite 2500
  Houston, Texas  77002
  713.758.3373

- Grubb & Ellis
  Attn: Doug Nicolson
  1330 Post Oak Boulevard, Suite 1400
  Houston, Texas  77056
  713.599.5135

## EXHIBIT C

A.   Seller may remain in possession of the property for a period of up to 45 days after the closing pursuant to a lease (which shall be in the form of the Texas Association of Realtor's Commercial Lease), between Buyer, as landlord, and Seller, as tenant. Seller shall not be required to pay rent, but shall be responsible for all operating costs, taxes, utilities and maintenance costs for the property during the term of the lease.

B.   The obligations of Buyer and Seller to consummate the sale of the property pursuant to this contract shall be subject to approval of this contract and the sale of the property pursuant hereto by the court and any other parties required by applicable bankruptcy law in Seller's bankruptcy case ("Bankruptcy Approval"). Seller and Buyer shall reasonably cooperate to procure such Bankruptcy Approval as soon as reasonably practicable. The Seller will seek the Bankruptcy Approval immediately after execution. Notwithstanding anything to the contrary contained in this contract, Buyer's feasibility period pursuant to Paragraph 7.B of this contract shall commence upon execution and shall expire on the later of: (i) sixty (60) days after execution, or (ii) sixty (60) days after such Bankruptcy Approval has been obtained. If such Bankruptcy Approval has not been obtained by the date that is ninety (90) days after the effective date, then Buyer and Seller shall each have the right to terminate this contract and upon such termination, Buyer shall receive a refund of its earnest money deposit.

C.   In addition to the closing deliveries specified in Paragraph 10 hereof, Seller and Buyer shall execute and deliver, an assignment of Seller's interest as lessee or tenant under that certain lease from Petrolite Corporation to Gerald Hines, recorded under Harris County Clerk's File No. F-5022u5, and amended by document recorded under Harris County Clerk's File No. F-818627. Seller will deliver to Buyer an estoppel certificate, dated at least three (3) business days (and not more than thirty (30) days) before the Closing signed by the landlord or lessor pursuant to such lease (or such party's successor as fee simple owner of the property). Such estoppel certificate shall contain those matters set forth in Paragraph 8.B of this contract, together with (i) such other matters as may be reasonably requested by Buyer, and (ii) to the extent required by the lease, the consent of the landlord or lessor to the assignment of the lease from Seller to Buyer pursuant to this contract.